Thomas MATHES, Jr., et al., Plaintiffs,

v.

Norman CARLSON, et al., Defendants.

No. 81–3331–CV–S–4.

United States District Court,
W. D. Missouri, S. D.

Jan. 25, 1982.

Plaintiffs appearing pro se.

F. O. Griffin, Jr., Asst. U. S. Atty., Kansas City, Mo., for defendant.

## ORDER

RUSSELL G. CLARK, Chief Judge.

Presently pending before this Court are the plaintiffs' motions: to amend their original complaint, for leave to proceed in forma pauperis and for temporary restraining orders. On September 22, 1981, plaintiffs, federal prisoners who are all Native American Indians, filed this action alleging that the defendants, federal prison officials, deprived them of their right to "exercise their traditional religion by harassing and denying them the free use of their traditional sacred religious and cultural objects, such as the sacred ceremonial Pipe (a/k/a the peace pipe), Headbands, Medicine bundles, sacred cedar, sacred buffalo braids, and similar traditional and cultural objects." Plaintiffs request $25,000,000 in damages and injunctive relief. For the reasons discussed below, the plaintiffs' motions will be denied.

## MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

In ruling a request for leave to file a civil action in forma pauperis, the Court first must determine whether the complaint states a claim which has a reasonable probability of succeeding on its merits. If a suit is frivolous, or if chances of success are highly dubious at best, the Court has an interest in protecting its forum from abuse by persons who are unable to pay costs or give security. Accordingly, prior to permitting a potential plaintiff to proceed in forma pauperis, a court should determine that the claim is substantial and not merely colorable or frivolous. *Serna v. O'Donnell*, 70 F.R.D. 618, 621 (W.D.Mo. 1976); *Clark v. Brandom*, 415 F.Supp. 883, 884 (W.D.Mo.1976). And generally, federal courts are given extremely broad discretion to deny a prisoner's privilege to prosecute a civil action in forma pauperis against prison officials. *Heiser v. Ellsworth*, 416 F.2d 19, 20 (9th Cir. 1969); *Diamond v. Pitchess*, 411 F.2d 565, 566 (9th Cir. 1969); *Carey v. Settle*, 351 F.2d 483, 485 (8th Cir. 1965).

An inmate's right to free exercise of religion is not absolute. A prisoner retains those First Amendment rights not inconsistent with his status as a prisoner or with a legitimate penal objective of the correctional institution. While the Court must respect the expertise and discretionary authority of correction officials, regulations which are unnecessarily restrictive or unreasonable will be struck down. *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *Teterud v. Burns*, 522 F.2d 357, 359 (8th Cir. 1975).

Unquestionably, Native American inmates should enjoy the same opportunities to exercise their religious beliefs and traditional tribal and spiritual or cultural services as other inmates. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Battle v. Anderson*, 457 F.Supp. 719, 738 (E.D.Okla.1978). Nevertheless, "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand. But *reasonable* opportunities must be afforded to all prisoners to exercise the religious freedom guaranteed by the First and Fourteenth Amendments without fear of penalty." *Cruz v. Beto*, 405 U.S. at 322 n. 2, 92 S.Ct. at 1081 (emphasis supplied). And while in custody of prison officials, federal penitentiary inmates have only such rights in the practice of their respective religions as can be exercised without impairing the requirements of prison security. *Cruz v. Beto*, 405 U.S. 319, 321,

92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Teterud v. Burns*, 522 F.2d 357, 359 (8th Cir. 1975); *Konigsberg v. Ciccone*, 285 F.Supp. 585, 595 (W.D.Mo.1968), *affirmed*, 417 F.2d 161 (8th Cir. 1969).

■ In the case presently before this Court, it is highly questionable whether the defendants have restricted the plaintiffs' rights to reasonably practice their religion, and even if they have, the restriction appears supported by an important and substantial government interest in prison security. The defendants' affidavits reveal that members of the Brotherhood of American Indians are presently allowed to: (1) meet twice a week for religious programs, (2) wear Indian headbands at all times, and (3) conduct special bi-annual Pow-wows with special Indian banquets which are attended by outside Indian religious people. Moreover, members of the Brotherhood of American Indians are currently allowed to use the following items during their spiritual meetings: drum and feather drumsticks, peace pipe, braided sweet grass which is used in the peace pipe, sacred cedar, golden eagle wingtip feathers, beads and beadwork, Indian flag, Indian prayer shawl, Indian loom, bone necklaces, bells, leather, traditional Indian music, and religious and cultural literature. In addition, the defendants have attempted to locate and finance a visit by an Indian Medicine Man to come to the institution to preside over spiritual meetings. This Court believes that the above examples adequately demonstrate that the plaintiffs' rights to reasonably practice their religion have not been restricted.

Plaintiffs' major contention is that the defendants will not allow them to have "medicine bundles" and are too slow in implementing a "sweat lodge" program for the plaintiffs. First, it is doubtful that the First Amendment would require the defendants to allow the plaintiffs to have medicine bundles and a sweat lodge in light of the extent to which the plaintiffs are presently allowed to reasonably practice their religion as outlined above. *See Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079,

1081, 31 L.Ed.2d 263 (1972) ("A special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand."). But further, defendants have not refused absolutely to allow the plaintiffs to have medicine bundles as the affidavit of defendant G. A. Ralston, Jr. states that "[t]he medicine bundles are not allowed for security reasons, as the Bureau of Prisons has been told by Native American Indians that we cannot inspect the contents of the medicine bundles. Since I am concerned with individuals attempting to introduce drugs, weapons, and escape plots into Federal Institutions, I will not allow introduction of medicine bundles *unless they are subject to inspection by custodial staff.*" (Emphasis supplied). Since prison security is, indeed, an important and substantial governmental interest, this Court believes that it is reasonable for the defendants to not allow anything to be brought inside the Institution, medicine bundles or bibles, unless they are subject to inspection by prison officials. Finally, the issue concerning the Sweat Lodge is moot as an American Indian Sweat Lodge Program is being implemented at the Institution at this time. Since the plaintiffs are afforded a reasonable opportunity to exercise their religion and the defendants have an important government interest in inspecting religious articles prior to their introduction into the prison environment, plaintiffs' request for leave to proceed in forma pauperis will be denied because the plaintiffs' claim does not have a reasonable probability of succeeding on its merits.

## MOTION FOR TEMPORARY RESTRAINING ORDERS AND FOR LEAVE TO AMEND

■ On December 16, 1981, plaintiff Thomas Mathes, Jr. moved this Court for a temporary restraining order contending that the defendants threatened him with a transfer to the Federal Correction Institution at Lompoc because of the pending litigation before this Court. Mere threatened

action is not "ripe" enough to be a justiciable controversy under Article III of the United States Constitution. *Federation of Labor v. McAdory*, 325 U.S. 450, 461, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945). Since the federal prison in Springfield, Missouri is a medical center, and as such, requires the continual transfer of prisoners after the correction of their medical infirmities so as to make room for other prisoners who are in need of medical attention, plaintiffs' first motion for a temporary restraining order will be denied. On December 30, 1981 plaintiff Mathes moved for another temporary restraining order stating that he had shipped his drum and ceremonial costume home because of his fear of their destruction and urged this Court to suspend all religious ceremonies, masses, and other religious functions at the prison and to ban the possession of all bibles, crosses, and beads by prison inmates. For the reasons discussed in the first part of this order, the plaintiff's second motion for a temporary restraining order will be denied. Finally, plaintiffs' motion for leave to amend their complaint so as to allege a class action will be denied because the class of American Indians at the United States Medical Center in Springfield, Missouri is not so numerous that joinder of all members is impracticable. *See* Rule 23(a).

Therefore, it is hereby

ORDERED that the plaintiffs' motion for leave to proceed in forma pauperis is denied; and it is further

ORDERED that both of the plaintiffs' motions for temporary restraining orders are denied; and it is further

ORDERED that the plaintiffs' motion for leave to amend his original complaint so as to bring a class action is denied.